CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
10/7/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:12-cr-32 |
| v. ) | |
| ) | |
| OSAMA MAHMUD MUSTAFA, ) | By:  Michael F. Urbanski |
| Defendant ) | Senior United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on defendant Osama Mahmud Mustafa's second motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), commonly known as a motion for "compassionate release." ECF No. 394.[1] Mustafa filed the motion pro se and the Federal Public Defender ("FPD") declined to supplement the motion. ECF No. 402. The government responded, ECF No. 403, and following the government's response, the FPD filed a reply on Mustafa's behalf. ECF No. 405. Because Mustafa has not demonstrated extraordinary and compelling circumstances to warrant a sentence reduction, the court **DENIES** his motion.

**I. BACKGROUND**

On April 19, 2013, a jury found Mustafa guilty of (1) conspiracy to defraud the United States in violation of 18 U.S.C. § 371; (2) conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349; and (3) conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Jury Verdict, ECF No. 228.

---

[1] Mustafa's first motion for compassionate release was filed on July 15, 2020, and denied on February 1, 2021. ECF Nos. 380, 392, 393.

Although the scheme was complex and involved sophisticated money laundering, at its core, the offense involved a group of between 15 and 20 people who filed fraudulent tax returns using the identities of deceased or incarcerated people. The individuals obtained U.S. Treasury checks and sold them to Mustafa or to one of his codefendants, Khaldoun Khalil Khawaja, for a percentage of the face value. The checks were then deposited by either Mustafa or another codefendant, Muawia Khalil Abdeljalil, into their respective bank accounts and the proceeds were withdrawn by the conspirators and transferred to each other via check. Presentence Investigation Report ("PSR"), ECF No. 388 ¶ 8. The total amount deposited was $17,775,190.80, of which $457,136 was reclaimed by the IRS. Id. ¶ 9. Bank records reveal that more than $6,000,000 was laundered by the defendants and Mustafa used other proceeds from the conspiracy to buy real estate and vehicles, and to pay for personal expenses. Id. ¶ 13.

The PSR states that for purposes of the United States Sentencing Guidelines ("USSG" or "guidelines"), Mustafa was accountable for $15,842,026 that he intended to obtain and could be held accountable for an additional $1,933,164 which was obtained by his coconspirators. In addition, Mustafa was responsible for deriving more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense. The PSR further states that a managerial role was appropriate because the criminal activity involved five or more participants and was otherwise extensive. The evidence showed that Mustafa determined the percentage paid to the individuals who brought him checks, that he profited the most from the offense, and that the scope of the offense involved a significant amount of money. PSR, ECF No. 388 ¶ 17.

The PSR also states that while Mustafa was on bond, he disposed of assets subject to seizure in violation of 18 U.S.C. § 2232(a) and in violation of a protective order entered in the case. He also was found to have threatened material witnesses. Additionally, while he was on bond awaiting sentencing, Mustafa removed his ankle monitor and absconded. Id. ¶ 22.

Mustafa faced a maximum statutory sentence of 5 years on Count 1, 30 years on Count 2, and 20 years on Count 3. Id. ¶ 59. For purposes of the guidelines, Mustafa had a base offense level of 7, increased by 20 levels because the loss in the case was greater than $7,000,000 but less than $20,000,000; increased by 2 levels because he derived more than $1,000,000 in gross receipts from one or more financial institutions; increased by 2 levels because he was convicted under 18 U.S.C. § 1956; increased by 3 levels for his role as a manager or supervisor; and increased by 2 levels for obstruction of justice, for a total offense level of 36. Id. ¶¶ 24–33. Mustafa had a criminal history category of I, which, combined with his total offense level of 36, gave him a guidelines sentencing range of 188 to 235 months. Id. ¶ 60.

On June 24, 2014, the court sentenced Mustafa in absentia.[2] The court sustained an objection by the government to add 2 levels to Mustafa's total offense level after finding that the offense involved sophisticated laundering. Statement of Reasons, ECF No. 333 at 1 (citing USSG § 2S1.1(b)(3)), which brought the total offense level to 38. Mustafa's criminal history category of I combined with his total offense level of 38 rendered a guidelines range of 235 to 293 months. Id.; USSG Ch. 5 Pt. A. The court sentenced Mustafa to 240 months in prison, to be followed by a 5-year term of supervised release. J., ECF No. 332. In addition, Mustafa was

---

[2] The Hon. Samuel G. Wilson presided over the trial and sentencing in this case. Upon his retirement, the case was transferred to the undersigned.

3

ordered to pay $17,333,246.01 in restitution. Id. In 2019, Mustafa was found in Jordan and extradited to the United States. See Order, ECF No. 378.

Mustafa has been in continuous custody since September 6, 2019. Sentence Computation Data, ECF No. 405-1 at 11. He currently is housed at FCI Petersburg Low and has a projected release date of August 3, 2035.[3]

## II. ANALYSIS

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Mustafa's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

---

[3] https://www.bop.gov/inmateloc/ (search term "Osama Mahmud Mustafa") (last viewed Sept. 17, 2025).

**A. Exhaustion**

The court begins by considering the threshold requirement for obtaining relief under § 3582(c)(1)(A). United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131.

Mustafa submitted a compassionate release request to the warden at his facility on June 10, 2024, and filed his motion for compassionate release more than thirty days later. Request for Compassionate Release, ECF No. 394-1. The government does not dispute that Mustafa has satisfied this threshold requirement. Resp. to Def.'s Mot. for Compassionate Release, ECF No. 403 at 4, n.2. Therefore, the court finds that Mustafa has fully satisfied the statute's administrative exhaustion requirement.

**B. Extraordinary and Compelling Reason**

The court next must consider whether it should reduce the term of imprisonment. Effective November 1, 2023, the United States Sentencing Commission amended the policy statement that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that extraordinary and compelling reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023) (USSG or guidelines). The revised policy statement will be applied to Mustafa's motion.

The policy statement in the revised guidelines now provides in USSG § 1B1.13(b) that an "extraordinary and compelling" reason warranting compassionate release can exist under any of the following circumstances, each of which includes detailed requirements and caveats:

(1) Medical Circumstances of the Defendant.

(2) Age of the Defendant.

(3) Family Circumstances of the Defendant.

(4) Victim of Abuse.

(5) Other reasons.

(6) Unusually Long Sentence.

Mustafa asserts the following grounds for a sentence reduction: (1) His sentence is excessively long; (2) he should not have received sentence enhancements for his role in the conspiracy or for obstruction of justice; (3) he received ineffective assistance of counsel; (4) there is an unwarranted sentence disparity between himself and other defendants with similar records who were found guilty of similar conduct; and (5) his successful efforts at rehabilitation.

**(1) Unusually Long Sentence**

Mustafa first argues that his 240-month sentence is unusually long and seeks relief under USSG § 1B1.13(b), which provides the following:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed

6

> at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSG §§ 1B1.13(b)(6).

This section of the policy statement offers Mustafa no relief. First, he has not served 10 years of his sentence but has completed only approximately 6 years of the sentence. Second, he points to no change in the law that demonstrates that if he were sentenced today, his sentence would be shorter than the sentence he received in 2014, such that there is a gross disparity between the sentence he received then and the sentence he likely would receive today. In the absence of those factors, Mustafa cannot show that he is entitled to a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), because such a reduction would not be consistent with USSG §§ 1B1.13(b)(6). Accordingly, this claim is **DENIED**.

### (2) Challenge to Sentence Enhancements

Mustafa's second and third grounds for relief, that he should not have received sentence enhancements for his role in the conspiracy or for obstruction of justice, cannot be brought in a compassionate release motion. United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022). Rather, "28 U.S.C. § 2255 is '[t]he exclusive remedy' for challenging a federal conviction or sentence after the conclusion of the period for direct appeal, 'unless [§ 2255] is inadequate or ineffective,' in which case the defendant may file a 28 U.S.C. § 2241 petition for habeas corpus pursuant to the savings clause at § 2255(e)." Id. Accordingly, Mustafa cannot challenge his underlying conviction or sentence, including the enhancements he received for his role in the conspiracy and for obstruction of justice, via this motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Therefore, this claim must be **DENIED**.

**(3) Ineffective Assistance of Counsel**

Mustafa also appears to argue that he received ineffective assistance of counsel because his attorney did not present him with a plea agreement prior to trial, and the lack of a plea agreement caused him to be "penalized heavily, compared to his codefendants." Mot., ECF No. 394 at 16–17. A claim of ineffective assistance of counsel is a collateral attack on a judgment and must be brought in a motion pursuant to 28 U.S.C. § 2255. Ferguson, 55 F.4th at 270; United States v. Whitted, No. 5:15-CR-00372-M-1, 2025 WL 1944018, at *5 (E.D.N.C. July 15, 2025). Accordingly, any claim for ineffective assistance of counsel brought by Mustafa is not cognizable in this motion for compassionate release and must be **DENIED**.[4]

**(4) Sentencing Disparity**

Mustafa next argues that an unwarranted sentencing disparity exists between himself and other defendants with similar records who were found guilty of similar conduct. He discusses the sentencing disparity both in the context of the sentences he and his codefendants received and in the context of sentences imposed for similar offenses in other courts.

**(a) Codefendants as Comparators**

The Fourth Circuit held in United States v. Johnson, 143 F.4th 212 (4th Cir. 2025), that USSG § 1B1.13(b)(5) gives a district court discretion to reduce a sentence on the basis that a defendant's sentence was significantly longer than that of his codefendants convicted of similar offenses. In Johnson, the defendant was involved in a multi-state drug-trafficking

---

[4] After Mustafa was sentenced in absentia, counsel filed a notice of appeal on his behalf. ECF No. 338. On September 17, 2014, the Fourth Circuit Court of Appeals dismissed the appeal based on the fugitive disentitlement doctrine, finding that his fugitive status disentitled him to call upon the court to resolve the issues in his case. Order, ECF No. 350. The limitations period for Mustafa to file a habeas corpus motion to challenge his conviction or sentence via 28 U.S.C. § 2255 expired while he was a fugitive.

enterprise during the 1990s. While participating in the enterprise, Johnson was responsible for the deaths of two people, as were three of his co-defendants. Id. at 213. Johnson elected to go to trial on the charges related to the two murders, as well as on firearms and related charges. He was convicted of voluntary manslaughter in one of the deaths, aiding and abetting in the murder of another of the victims, and two firearm offenses. Johnson was sentenced to two terms of life imprisonment plus 790 months. Id. at 213–14.

After Johnson was convicted, two of Johnson's codefendants pled guilty and assisted the government. One of the codefendants pled guilty to one count of murder for which he received a mandatory life sentence, with the sentence later being reduced to a term of 20 years. A second codefendant pled guilty to charges related to the killing of two people and received two mandatory life sentences, later reduced to a total of 40 years. Id. at 214. A third person involved in the conspiracy was arrested in another jurisdiction. He pled guilty to conspiracy to commit murder for hire, murder for hire, three firearm counts, two counts of Hobbs Act robbery, and one count of making false statements. He also testified against Johnson. Id. The third codefendant was sentenced to a term of five years. Id.

Johnson argued that the disparities in the sentence that he received compared to that of his codefendants constituted an extraordinary and compelling reason for a sentence reduction. Id. The district court agreed for the reasons cited by Johnson as well as for other reasons, and reduced Johnson's sentence to 35 years. Id. at 215.

On appeal, the Fourth Circuit affirmed the district court:

> In determining whether an extraordinary and compelling reason exists to grant a defendant compassionate release, and in addition to the various circumstances outlined in § 1B1.13(b), § 1B1.13(b) allows a district court to contemplate "other reasons" that may

9

> constitute "extraordinary and compelling." § 1B1.13(b)(5). A district court may consider this reason by itself or in combination with any other reasons outlined in § 1B1.13(b), so long as they "are similar in gravity[.]" § 1B1.13(b)(5). In other words, there is no exhaustive list as to what may be considered extraordinary and compelling, and it was well within the district court's discretion to find "other reasons," such as Johnson's sentencing disparity, constituted an extraordinary and compelling factor that weighed in favor of granting relief.

Id. at 216.

Like Johnson, Mustafa argues that the sentence he received was much longer than those of his codefendants although they were convicted of similar offenses and the difference in the sentences warrants a sentence reduction for him. However, the record here supports a finding that the differences in the sentences were based on differences in the actions of the defendants and on the fact that Mustafa elected to go to trial while his codefendants pled guilty. In addition, one of the codefendants cooperated with the government and in return, received a below-guidelines sentence.

As set forth above, Mustafa had a statutory sentencing range of 5 to 30 years on his offenses and a guidelines range of 235 to 293 months and was sentenced to 240 months. J., ECF No. 332; Statement of Reasons, ECF NO. 333. This sentence was at the low end of the guidelines, but still significantly longer than the sentences of his codefendants.

One codefendant, Abdeljalil, entered into a Rule 11 plea agreement in which he agreed to plead guilty to one count of conspiracy to defraud the United States in violation 18 U.S.C. § 371, which carried a maximum statutory penalty of 5 years; one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) which had a maximum penalty of 20 years; and one count of structuring currency transactions to avoid reporting requirements

10

in violation of 31 U.S.C. §§ 5324(a)(1) and 5324(d), and 31 C.F.R. Part 103, with a maximum penalty of 10 years. In addition, he pled guilty to one count of marriage fraud in violation of 18 U.S.C. § 1325, which carried a maximum penalty of 5 years.[5] Abdeljalil Plea Agreement, ECF No. 173 at 1.

Abdeljalil was found accountable for laundering $1,820,196 through his bank accounts, of which $133,804 was recovered, making him responsible for deriving more than $1,000,000 in gross receipts from one or more of his financial institutions. His structuring of withdrawals to avoid detection and reporting requirements involved more than $100,000 in a 12-month period. The total sum of money involved in the structuring transactions was $1,891,689. Abdeljalil PSR, ECF No. 283 ¶ 18.

Abdeljalil had a base offense level of 6, increased by 16 levels because the loss pertaining to the money laundering was more than $1,000,000 but less than $2,500,000; increased by 2 levels because he derived more than $1,000,000 in gross receipts from one or more financial institution; increased by 2 levels because he was convicted under 18 U.S.C. § 1956; and decreased by 3 levels for acceptance of responsibility, for a total offense level of 23. Abdeljalil's offense level combined with his criminal history category of III gave him a guidelines sentencing range of 57 to 71 months. Id. ¶¶ 29–51, 80. On August 30, 2013, Abdeljalil was sentenced to a term of 57 months to be followed by a 3-year term of supervised release. J., ECF No. 276.

---

[5] Abdeljalil was convicted of marriage fraud in United States v. Abdeljalil, No. 7:12-cr-00031 (W.D. Va. Aug. 30, 2013) at ECF No. 93.

Mustafa's other codefendant, Khawaja, entered into a Rule 11 plea agreement on March 7, 2013, in which he agreed to plead guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, which carried a maximum statutory penalty of 5 years, and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), which carried a maximum penalty of 20 years. Khawaja Plea Agreement, ECF No. 181 at 1. According to the PSR, Khawaja was accountable for the entire amount of IRS checks deposited during the scheme totaling $17,575,190 and was responsible for deriving more than $1,122,373 in gross receipts from one or more financial institutions as a result of the offense. In addition, he was found to have a managerial role because his criminal conduct involved five or more participants and, along with Mustafa, he determined the percentage paid to the individuals who brought them the checks, he earned a significant profit from the offense, and the scope of the offense involved a large amount of money. Khawaja PSR, ECF No. 282 ¶ 18.

Khawaja had a base offense level of 6, increased by 20 levels because the loss exceeded $7,000,000 but was less than $20,000,000; increased by 2 levels because he derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense; increased by 2 levels because he was convicted under 18 U.S.C. § 1956; increased by 2 levels for his role in the offense as an organizer, leader, manager, or supervisor in any criminal activity, and decreased by 3 levels for acceptance of responsibility, for a total offense level of 29. Id. ¶¶ 27–40. Khawaja had a criminal history category of III, which combined with his total offense level of 29, gave him a guidelines sentencing range of 108 to 135 months. Id. ¶ 60, 77; USSG Ch. 5 Pt. A.

The government filed a motion for substantial assistance in Khawaja's case and on August 30, 2013, Khawaja was sentenced to a below-guidelines sentence of 70 months' imprisonment to be followed by a 3-year term of supervised release. J., ECF No. 274; Statement of Reasons, ECF No. 275 at 2. The sentence later was reduced to 43 months after it was determined that Khawaja had not received credit toward his sentence for time spent in custody on a sentence imposed by the United States District Court of Florida on a related case that otherwise would not be credited to his sentence by the Bureau of Prisons. Am. J., ECF No. 342 at 2.

Comparing Mustafa's sentence to those of his codefendants, his longer sentence was driven by his higher total offense level, which in turn was driven by his conduct and his decision to go to trial. All three defendants had a base offense level of 7, but Abdeljalil's and Khawaja's base offense levels were reduced by 1 point in accordance with their plea agreements. See Mustafa PSR, ECF No. 388 ¶ 26; Abdeljalil PSR, ECF No. 283 ¶ 31; and Khawaja PSR, ECF No. 282 ¶ 29. Mustafa and Khawaja both received 20-level increases based on the monetary loss attributed to them, while Abdeljalil received a 16-level increase based on the monetary loss attributed to him. See Mustafa PSR, ECF No. 388 ¶ 27; Abdeljalil PSR, ECF No. 283 ¶ 32; and Khawaja PSR, ECF No. 282 ¶ 30. All three defendants received 2-level increases because they were convicted under 18 U.S.C. § 1956, and 2-level increases because they derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense. See Mustafa PSR, ECF No. 388 ¶ 28, 29; Abdeljalil PSR, ECF No. 283 ¶ 33, 34; and Khawaja PSR, ECF No. 282 ¶ 31, 32. Mustafa received a 3-level increase for his role in the offense while Khawaja received a 2-level increase and Abdeljalil received none. See

Mustafa PSR, ECF No. 388 ¶ 31; Abdeljalil PSR, ECF No. 283 ¶ 36; and Khawaja PSR, ECF No. 282 ¶ 34.[6]

Mustafa received a 2-level increase for obstruction of justice, which Abdeljalil and Khawaja did not receive. See Mustafa PSR, ECF No. 388 ¶ 32; Abdeljalil PSR, ECF No. 283 ¶ 43; and Khawaja PSR, ECF No. 282 ¶ 35. In addition, at sentencing, the court sustained an objection by the government and applied a 2-level increase to Mustafa pursuant to USSG § 2S1.1(b)(3), because the offense involved sophisticated laundering. Statement of Reasons, ECF No. 333 at 1. Finally, Abdeljalil and Khawaja received 3-level decreases for acceptance of responsibility which Mustafa did not receive. See Mustafa PSR, ECF No. 388 ¶ 35; Abdeljalil PSR, ECF No. 283 ¶¶ 49, 50; and Khawaja PSR, ECF No. 282 ¶¶ 38, 39. Khawaja received an additional sentence reduction because he cooperated with the government. Mot., ECF No. 266, Khawaja Statement of Reasons, ECF No. 275 at 2. In the Statement of Reasons filed in Mustafa's case, the court stated that it considered the 18 U.S.C. § 3553(a) factors, specifically the need to provide deterrence, to account for the magnitude of the crime, and to address Mustafa's flight and his disposal of assets. Mustafa Statement of Reasons, ECF No. 333, at 4.

Mustafa's situation is not like that of Johnson, where Johnson appeared to have engaged in violent conduct that was substantially similar that of his codefendants who ultimately received much shorter sentences. Mustafa's sentence is longer than that of his

---

[6] USSG § 3B1.1 provides for an increase to an offense level based on a defendant's role in the offense. Mustafa received a 3-level increase under § 3B1.1(b), which applies "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive[.]" Khawaja received a 2-level increase under § 3B1.1(c), which applies "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in subsection (a) or (b)[.]"

codefendants because he played a greater role in the offense, engaged in obstruction of justice, and did not receive the 3-level reduction for acceptance of responsibility. In addition, one of his codefendants cooperated with the government, which further reduced his sentence. See United States v. Millner, No. JKB-08-0086-23, 2023 WL 2457094, at *2 (D. Md. Mar. 10, 2023) ("[S]entencing disparities between co-conspirators are 'expected and appropriate' where all members of the conspiracy were not 'similarly situated.'") (quoting United States v. Smith, 836 F. App'x 149, 153 (4th Cir. 2020)); United States v. Henry, No. SAG-05-0147, 2022 WL 2905057, at *3 (D. Md. July 22, 2022) (finding that absent some other defect in the sentencing process, there is nothing extraordinary and compelling about a sentencing judge intentionally imposing a disparate sentence when he or she believes it is warranted under the relevant sentencing factors). The circumstances in Mustafa's case do not present an extraordinary and compelling reason for the court to reduce Mustafa's sentence, and, accordingly, this claim is **DENIED**.

### (b) Unrelated Defendants as Comparators

Mustafa also compares his sentence to sentences received by defendants convicted of fraud in unrelated cases who received shorter sentences than he did.[7] However, to establish a sentencing disparity, a defendant must provide an appropriate comparator. United States v. Locust, 771 F.Supp.3d 819, 826 (E.D. Va. Mar. 21, 2025). "This showing goes to the heart of sentencing." Id. "Simply comparing two defendants' sentences unmoored from the underlying facts is 'treacherous because each sentencing proceeding is inescapably individualized[.]'" Id.

---

[7] Mustafa cites to United States v. Manafort, 312 F.Supp.3d 60 (D.D.C. 2018), and to the cases of six defendants associated with the Bernie Madoff fraud scheme. See, generally, United States v. Bonventre, 646 F. App'x 73 (2d Cir. 2016). Mot., ECF No. 394 at 24–27.

(quoting United States v. Rivera-Santana, 668 F.3d 95, 105 (4th Cir. 2012)). To show that an unwarranted sentencing disparity exists, a defendant must show that the comparators he asks the court to consider have similar records and were found guilty of similar conduct. Id. at 827.

Mustafa has not made that showing here. He lists the names of seven cases and provides short synopses of each, but provides no further information about the offenses, the statutory sentences applicable in the case, the guidelines calculations, or any other factors considered by the court. Mot., ECF No. 394 at 24–27. Without that information, the court cannot find that Mustafa is serving a disparate sentence that could be considered an extraordinary and compelling reason to grant a sentence reduction. Therefore, this claim is **DENIED**.

**(5) Rehabilitation**

Mustafa also argues that he is entitled to compassionate release because he has made substantial efforts and progress toward rehabilitation. Mustafa has completed several BOP programs and is classified as a low security risk with a low risk of recidivism. ECF No. 394-4 at 2, 8; ECF No. 403-4 at 2. He participates in the inmate financial responsibility program and pays $170 per month toward the $17.3 million he owes in restitution. ECF No. 405-1 at 15.

The relevant policy statement provides the following regarding rehabilitation:

> Rehabilitation of the Defendant—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

USSG § 1B1.13(d). While Mustafa has made solid progress at rehabilitation, without showing an extraordinary and compelling ground for a sentence reduction based on a reason listed under USSG § 1B1.13, he cannot show that he is entitled to a sentence reduction under USSG § 1B1.13(d). As he has not done so, his motion for a sentence reduction must be **DENIED.**

### C. 18 U.S.C. § 3553(a) Factors

Because the court determined that Mustafa has not shown an extraordinary and compelling reason for a sentence reduction, it need not assess the § 3553(a) factors. See United States v. Bethea, 54 F.4th 826, 833 (4th Cir. 2022) (describing the "extraordinary and compelling" reasons for relief as a threshold for eligibility); United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.")

### III. CONCLUSION

For the reasons set forth above, the court **DENIES** Mustafa's motion for compassionate release, ECF No. 394.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: October 6, 2025

Michael F. Urbanski
U.S. District Judge
2025.10.06 15:39:24 -04'00'

Michael F. Urbanski
Senior United States District Judge